FILED

FEB 13 1976

JANE P. GORDON, CLERK

DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

GLENNIE WIGGINS, et al.,           )
                                   )
            Plaintiffs,            )
                                   )
vs.                                )     CIVIL ACTION NO. 75-57-S
                                   )
R. H. HOLLIS, JR., et al.,         )
                                   )
            Defendants.            )

## CONSENT DECREE

This Class Action was filed on June 3, 1975, challenging various employment practices and procedures by the City of Dothan, Alabama. More particularly, the Plaintiffs claimed that black persons were being discriminated against by the City on the basis of race in the City's recruiting, hiring, promoting, assigning, and testing practices. On the 30th day of July, 1975, the Defendants filed their Answer denying that any of them had discriminated against or were discriminating against the named Plaintiffs or any members of the class they represent.

NOW, in resolution and settlement of all pending claims and allegations and without adjudication of the merits, the Parties agree to the entry of and to be bound by the following Order and Decree:

I

It is ORDERED, ADJUDGED AND DECREED that all of the Defendants, including the City of Dothan, the Citizens Supervisory Committee, the personnel director, and the City Committees, their agents, assigns, employees, successors in office, and all those acting in concert or participating with them, be and the same are hereby permanently enjoined from discriminating on the basis of race against the named Plaintiffs and the members of the class they represent in recruiting, hiring, promoting, assigning, and testing all job applicants and/or City employees.

II

It is further ORDERED, ADJUDGED AND DECREED:

37

A. The Citizens Supervisory Committee shall be expanded so that at least 25% of the organizations and clubs comprising the CSC shall have substantially black memberships. The following four organizations with predominantly black members shall be added immediately to the Citizens Supervisory Committee:

    1. The Dothan Chapter of the National Association for the Advancement of Colored People.

    2. The Dothan Elks Club (Black).

    3. The Young Men's Civic Club of Dothan.

    4. The Renaissance Wives' Club.

B. The City will immediately commence an affirmative action recruitment program designed to attract qualified applicants from the black community. In addition to continuing its present affirmative action recruitment policies and efforts, the City will:

    1. Advertise all positions (classified and unclassified) and publicize all employment tests in the Dothan Eagle, in block form, three times in a ten day period, prior to the filling of the position or the taking of the test. In addition, each classified position, each supervisory unclassified position, and each employment test shall, prior to its filling or taking, be publicized at least three times in a ten day period on WDIG radio in Dothan.

    2. Each job or test announcement shall include the expression "the City of Dothan is an equal opportunity employer M/F".

    3. The City shall establish a speaker's bureau, comprised of the Mayor, City Commission, the Personnel Board, the Personnel Director, and the City's EEO Officer, which will schedule and present talks to black civic, social, fraternal, church, and civic groups in Dothan about job opportunities for blacks with the City.

    4. Commence recruitment efforts at the predominantly black colleges and universities in Alabama, including Tuskegee and Alabama State University.

    5. Include pictures of black persons and black employees in all promotional literature prepared by or for the City of Dothan.

C. The City will immediately initiate the following changes and reforms in its job testing policies and practices:

-2-

1. Continue present test validation efforts, including but not limited to, preparing valid task analyses, evaluation forms, etc.

2. Stop using the present entry level police and fire entry level written tests and the police sergeant written promotional test. The City will immediately employ police and fire testing experts agreed to by the parties, and allow those persons to develop a job related test and/or screening device for the three positions which will comply with E.E.O.C. requirements. The screening device for the position of sergeant will consist, in addition to a written test, of evaluations, on-the-job performance, etc. to be determined by the testing expert and the Chief of the Police Department.

3. Continue evaluating and validating each of the other employment tests given by the City until all tests have been shown to be job related in accordance with E.E.O.C. standards and guidelines in existence at the time of the entry of this Decree.

4. Implement a remedial program to help job applicants prepare for police and fire written promotional tests. This would include advice and guidance from the Department Head on books and resource materials which will be of assistance in preparing for promotional tests and/or screening devices. The Department Head shall also be responsible for providing such books and resource materials to interested applicants.

D. The City shall appoint one person to act as EEO Officer for the City. The person holding this position shall be responsible for implementing the provisions of this Decree and the provisions of the "Affirmative Action Plan". This individual shall further be responsible for ensuring that all employment tests and screening devices used by the City are validated in accordance with EEOC guidelines, for ensuring that the provisions of this Decree and the "Affirmative Action Plan" are being complied with, for receiving, processing, and following up on any complaints of racial discrimination made by any black applicant, employee, and/or community person, and for preparing a "Personnel Policy Manual" for the City's EEO program.

E. The Defendant Police Chief and Defendant Fire Chief, their employees, successors in office, and all persons acting in concert with them shall:

1. Be enjoined from discriminating against black employees in assignments.

-3-

2. Be required to cross-train and assign black employees in the same manner that white employees are cross-trained and assigned.

3. Be enjoined from discriminating against black employees in on-the-job training and schooling.

4. Be required to train and send to schools, training sessions, etc. black employees on the same basis as white employees.

5. Be required to assign and allow black employees to patrol and serve all sections of the City of Dothan.

6. Be required to see that black employees and white employees shall drive, eat, sleep and work together while on duty.

7. Be enjoined from using the word "nigger" or any other deprecatory term for a black person.

8. Be required to accord black employees all of the rights and privileges given white employees, including, but not limited to, shift assignments, work schedules, etc.

F. The City shall establish a procedure whereby each time a black applicant or black employee is referred by the Personnel Board for a position and is not hired, the appointing authority shall be responsible for explaining, in detail, his reason for not hiring the black person. This explanation shall be in writing and shall be forwarded to the EEO officer who shall satisfy himself that the reasons given are valid and nondiscriminatory. If the EEO officer is not so satisfied, then he shall report the matter to the Personnel Board which shall investigate the matter, conduct a hearing with notice to all parties, and thereafter be authorized to direct the appointment if the Board determines an applicant has been rejected or discriminated against because of his race.

G. The present promotion register for the position of Sergeant in the Dothan Police Department shall be abolished and the Police Chief of the City of Dothan shall be authorized to make provisional appointments for such positions until an acceptable validated written test and/or screening device can be developed for use in filling this position. The Plaintiff Williams will receive a provisional appointment within 30 days as a Sergeant in the Dothan

-4-

Police Department, with all the rights and privileges and duties of any other Sergeant, and when the validated written test and/or screening device have been developed, he will then take such written test and, if he achieves a passing grade, he shall retain the position of Sergeant. In the event the Plaintiff Williams does not pass such written test, he may be demoted from the position of Sergeant or assigned to such other positions in the Dothan Police Department as the Police Chief deems appropriate at such time.

H. The "Affirmative Action Plan" previously prepared and filed by the City of Dothan with the Court, in the case styled Yelverton v. Driggers, Civil Action No. 1302-S (M. D. Ala.) shall be made a part of and shall be incorporated into this Consent Decree. All of the Defendants shall be required to comply with the provisions of this "Affirmative Action Plan".

I. Defendants shall file with the Court and with Plaintiffs' counsel on an annual basis for a period of four years from the date of the entry of this Decree, a report outlining the extent of compliance with the terms and provisions of this Decree.

J. The City shall pay all court costs and expenses incurred by Plaintiffs in this litigation and shall pay Plaintiffs' attorney a reasonable attorney's fee.

DONE this the 13d day of February, 1976.

_____
United States District Judge

_____
Attorney for the Plaintiffs

William G. Hause

Robb Melton Jr.
Attorneys for the Defendants

FILED

JUL 20 1976

JANE P. GORDON, CLERK

BY

DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

GLENNIE WIGGINS, et al.,        )
                                )
        Plaintiffs,             )
                                )
VS.                             )    CIVIL ACTION NO. 75-57-S
                                )
R.H. HOLLIS, JR., et al.,       )
                                )
        Defendants.             )

## JOINT PETITION TO MODIFY CONSENT DECREE

Come now the Parties, by and through their attorneys, and
respectfully petition the Honorable Court to modify and amend
Paragraph "B." of the Consent Decree, entered and approved by
the Court on February 11, 1976, in the following manner:

B.          The City will immediately commence an
        affirmative action recruitment program designed
        to attract qualified applicants from the black
        community.  In addition to continuing its
        present affirmative action recruitment policies
        and efforts, the City will:

        1.  Fill positions (classified and unclassified) as
        follows:

            (a)  LABORERS (Unclassified).  Place requests
                 for laborers with the Alabama State
                 Employment Service for the required number
                 of laborers needed as vacancies occur
                 and are to be filed.

            (b)  ENTRY LEVEL POSITIONS (Classified).  All
                 openings and vacancies for entry level
                 positions with the City of Dothan will be
                 advertised in The Dothan Eagle in block
                 form at least three (3) times and will be
                 broadcast in spot announcements on WDIG
                 Radio at least three (3) times during
                 the ten (10) day period immediately prior
                 to the giving of employment tests for
                 said position and/or the filling of said
                 position.  Additionally, all City de-
                 partments will be notified by memorandum
                 to be posted on Department Bulletin
                 Boards of entry level positions that
                 are vacant and are to be filled.

**(c) CLASSIFIED VACANCIES (Other Than Entry Level or Classified Promotions).**

    (1) All vacancies and/or promotions for classified positions, other than entry level classified positions, shall be advertised internally in all Departments within the City. Such positions will be advertised by the posting of Memoranda on all Department Bulletin Boards at least ten days prior to the cut-off date for applying for said position. Said Memoranda, which are to be prepared and issued by the City's Personnel Department, shall give information regarding the position, including, but not limited to, the name of the position, minimum qualifications for the position, and the closing date for receiving applications for said position.

    (2) In the event there are no interested or qualified individuals who apply for announced vacancies, said positions will then be announced and advertised as indicated in Paragraph "1.(b)" above (Entry Level Positions).

**(d) DEPARTMENT HEADS (Unclassified).**

    (1) Vacancies for Department Heads shall be advertised internally within the City Departments in the same manner as provided for in Paragraph "1.(c)(1)" above. In the event there are no interested or qualified individuals who apply for the announced Department Head vacancy, said position will then be advertised in the manner described in Paragraph "1.(b)" above, and, if necessary to seek out and attract professionally qualified individuals, said position shall further be advertised in State/National professional periodicals and publications. All these actions may be initiated concurrently if time is a critical factor.

**(e) VACANCIES FOR SPECIFIC CITY OFFICIALS (Unclassified).**

    (1) Vacancies for the following positions and offices: (A) Officers elected by popular vote; (B) Principals, Supervisors, Teachers and Instructors engaged in supervising or teaching in the Public Schools of the City of Dothan, along with all other Employees of the City Board of Education; (C)

-2-

Independant Contractors receiving their remuneration from public funds under contract awarded by competitive bidding; (D) Attorneys, Physicians, Surgeons and Dentists employed in their professional capacities; (E) the Judge of The City's municipal Court(s); and (F) Members of Boards, who are not employed on a full time basis and are not required to devote their entire services to the City, are excluded from the scope of this Paragraph. Vacancies for said positions shall, of course, be filled in such manner as to fully comply with the laws of the State of Alabama and of the United States and with the various federal court decrees governing said positions.

Respectfully submitted,

Howard A. Mandell
129 Washington Avenue
P. O. Box 1904
Montgomery, Alabama  36193

ATTORNEY FOR PLAINTIFFS

Oakley Melton, Jr.
P. O. Box 1267
Montgomery, Alabama  36102

William C. Mause
The City of Dothan
Dothan, Alabama  36301

ATTORNEYS FOR DEFENDANTS

Id.   Once, when exchanging money with a white officer on a public corner, the officer said to him, "People aren't going to know what to think with a nigger giving a white man money." Gray Deposition (doc. no. 34-3) at 110.   Gray also recounts several uses of the slur by officers away from his presence; he became aware of these incidents through the internal investigations that they sparked.   He also contends that superior officers developed code words to refer to people of different races.

Several officers were affiliated with organizations and viewpoints that Gray considered racially offensive. For example, Gray's direct supervisor at the time of his termination, Steve Parrish, was once a member of the Sons of Confederate Veterans, a group dedicated to memorializing the history and values of the Southern Confederacy.[1]   Parrish named his son after Nathan

---

1.   Gray has submitted evidence explaining that there is an ongoing debate among members of the Sons of Confederate Veterans as to whether the focus of the

8

Bedford Forrest, a confederate general and first national leader and "Grand Wizard" of the Ku Klux Klan; Parrish's office was decorated with confederate memorabilia. Several other city police officers were members of the Sons of Confederate Veterans, including the officer who replaced Gray after his termination. Gray complained about Parrish's association with the group in an internal race-discrimination complaint described below.

Gray also witnessed other racially offensive private behavior from his fellow officers. For example, he once viewed a picture on Officer Michael Woodside's Facebook page depicting the partially charred face of President Obama and derogatory comments about the President. Moreover, Gray submitted a

---

organization should be a history or genealogy club, or to promote racial extremism. In any case, it is clear that representatives of the group have organized events supporting the values of the Confederacy and its associations with slavery and apartheid enforced by violence.

9



PICTURED IN THE IMAGE ABOVE, CARLTON OTT,  CLARK RICE,  STEVE HAMM,
STEVE PARRISH, DAVID JAY, MICHAEL MAGRINO, DEWAYNE HERRING, ANDY

NOTE ALL NOTES, HIGHLIGHTS AND WORD WRITTEN ON THE
PREVIOUS EXHIBITS ARE NOT THE PLAINTIFFS





U.S. Department of Justice

Federal Bureau of Investigation



In Reply, Please Refer to:
File No.

Post Office Box 2126
Mobile, Alabama 36652

September 2, 2004

Honorable Leura Garrett Canary
United States Attorney
Middle District of Alabama
P.O. Box 197
Montgomery, Alabama 36103

Attention:  Assistant United States Attorney
AUSA Todd Brown

RE:

Dear Mrs. Canary:

The purpose of this letter is to confirm a conversation between AUSA Todd Brown of your office and Special Agent (SA) of the Mobile Office regarding referenced individual.

On August 18, 2004, AUSA Todd Brown was advised of the identity of and concurred with the utilization of in the investigation regarding case captioned, "Jimmie Albritton; Neil Walker; Drury Mills; Robert Jackson - Victim, City of Dothan Police Officer, Dothan, Alabama, 01/31/1978, ITAR - Murder for Hire."

**Exhibit R**

United States Attorney       ~~Notice for Closed Legal Case File~~

## INSTRUCTIONS

Section I.   Self explanatory
Section II.   Each closed case must be reviewed to determine if either or both criteria in Item 1 apply. If not, check the appropriate block in Item 2.
Section III.   Check the method(s) closed.
Section IV.   An Assistant U.S. Attorney must certify the accuracy of the disposition review (Section II) and the method(s) closed (Section III) for each closed case.

### Section I: GENERAL

| Division: Criminal | Section: | Case No. 2004R00261 |
|---|---|---|

Case Title    US v. Wyckle D. Williams

### Section II: DISPOSITON

**1. Recommend permanent retention by the National Archives 30 years after close of case because this issue:**

☐ Had an impact on a statute, rule, regulation, or law enforcement policy, e.g., set a precedent.

☐ Received local, regional or national media attention, or the interest of a Congressional committee or the Executive Office of the President, or widespread public interest.

**2. This closed case does not meet any of the above criteria for permanent retention. Disposition is as follows (select one).**

☒ This case involves no sentence, or a sentence of 10 years or less, including special parole/supervised release. Destroy 10 years after close of case.

☐ This case involves a sentence of more than 10 years, including special parole/supervised release. Destroy _____ years after close of case (length of sentence/parole/supervised release plus one year).

☐ This case involves a life sentence. Destroy 65 years after close of case.

**3.** ☐ This is a debt collection record maintained separately from the litigation case. Destroy six years after close of debt collection case.

### Section III: METHODS(S) CLOSED

| CIVIL | CRIMINAL | COLLECTIONS |
|---|---|---|
| ☐ Judgment for U.S. | ☐ Conviction | ☐ Debt Paid in Full |
| ☐ Judgment for Opposing Party | ☐ Acquittal | ☐ Partial Payment of Debt |
| ☐ Settlement | ☑ Declination | ☐ Amount Collected |
| ☐ Necessary Action Taken | ☐ Judicial Transfer to: | ☐ Uncollectible |
| ☐ Other: | ☐ Other: | |

### Section IV: CERTIFICATION

I certify that the disposition review (Section II) and the method(s) closed (Section III) are accurate.

_(Signature of Assistant U.S. Attorney)_      **02/21 06**
         Date

Previous editions are obsolete     U.S. Government Printing Office: 2002 — 408-240/82477     FORM USA 201 Revised June 2000

**Leaked Documents Reveal Dothan Police Department Planted Drugs on Young Black Men For Years, District Attorney Doug Valeska Complicit**



[ Pictured in the image above, Carlton Ott, Clark Rice, Steve Hamm, Steve Parrish, David Jay, Dewayne Herring, Andy Hughes, Gary Coleman, and Scott Smith ]

The Alabama Justice Project has obtained documents that reveal a Dothan Police Department's Internal Affairs investigation was covered up by the district attorney. A group of up to a dozen police officers on a specialized narcotics team are believed to have planted drugs and weapons on young black men for years. They were supervised at the time by Lt. Steve Parrish, current Dothan Police Chief, and Sgt. Andy Hughes, current Asst. Director of Homeland Security for the State of Alabama. All of the officers reportedly were members of a Neoconfederate organization that the Southern Poverty Law Center

labels "racial extremists." The group has advocated for blacks to "return" to Africa, published that the civil rights movement is really a Jewish conspiracy, and that blacks have lower IQ's . Both Parrish and Hughes held leadership positions in the group and are pictured above holding a confederate battle flag at one of the club's secret meetings.

The documents shared reveal that the internal affairs investigation was covered up to protect the aforementioned officers' law enforcement careers and keep them from being criminally prosecuted.

Several long term Dothan law enforcement officers, all part of an original group that initiated the investigation, believe the public has a right to know that the Dothan Police Department, and District Attorney Doug Valeska, targeted young black men by planting drugs and weapons on them over a decade. Most of the young men were prosecuted, many sentenced to prison, and some are still in prison. Many of the officers involved were subsequently promoted and are in leadership positions in law enforcement. They hope the mood of the country is one that demands action and that the US Department of Justice will intervene. The group of officers requested they be granted anonymity, and shared hundreds of files from the Internal Affairs Division. They reveal a pattern of criminal behavior from within the highest levels of the Dothan Police Department and the district attorney's office in the 20th Judicial District of Alabama. Multiple current and former officers have agreed to testify if United States Attorney General Loretta Lynch appoints a special prosecutor from outside the state of Alabama, or before a Congressional hearing. The officers believe that there are currently nearly a thousand wrongful convictions resulting in felonies from the 20th Judicial District that are tied to planted drugs and weapons and question whether a system that allows this can be allowed to continue to operate.

Members of the Henry County Report have spent weeks analyzing the documents. The originals, secured at an N.G.O. in Canada, are being shared directly with attorneys in the U.S. Dept. of Justice Civil Rights Division, and are being made available to the lawyers of those falsely convicted that seek to clear their names. The initial effort is to identify the 50 potential victims identified in the case folders of the officer investigated that were outstanding before the court at the time of his investigation. Then further identify the drug arrests made by the other members of the team that had written complaints filed against by fellow officers, that alleged targeting of minorities as is evidenced in the letter presented to the city commision in the leaked documents.

There are two federal lawsuits currently pending by former police officers Keith Gray and Raemonica Carney against the Dothan Police Department. They will be given access as well as they potentially substantiate their claims of racial discrimination and city's violation of a federal court decree.

The documents appear to serve as irrefutable evidence of criminal activity at the highest levels of the Dothan Police Department. Beginning in early 1996, the Dothan Police Department received complaints from black victims that drugs and weapons were being planted. Specifically young black men who had clean records were targeted. Police Chief, John White, allegedly instructed senior officers to ignore the complaints and they willingly complied.

In early 1998, we have been given information that a group of concerned white officers from within the Police Department complained in writing about what they witnessed. This is reflected in the document below where it refers to a series of allegations that took place over 11 months before the department acted. The initial written complaint from the

department's own officers is dated June, 1998. The internal memo documents the last allegation as occurring in April of 1999. Almost a year of internal complaints by the department's own police officers passed before Chief White turned it over to the Internal Affairs Division. On August 27, 1999 more than a dozen officers had allegations against them for planting drugs and weapons on black men they had falsely arrested. They were each notified of a formal investigation and required to prepare statements in writing to the Internal Affairs Division. One was then tested by polygraph examination, and reportedly failed. The notification of charges reference a combination of marijuana, cocaine, and guns being planted on citizens during arrests that were witnessed by multiple fellow police officers.

All of these cases involving planted drugs and weapons were subsequently prosecuted by District Attorney, Doug Valeska, despite the written allegations by police officers that the evidence was planted. Never was any such information shared in the discovery process with the defendant's attorneys. We have been advised that each of these are considered potential felonies committed by the district attorney. The law clearly requires that the prosecutor is required to turn over any evidence that is favorable to the accussed.



District Attorney Doug Valeska

One of the officers alleged to have planted drugs and guns, Michael Magrino, now a private investigator working for the state's Indigent Defense Fund was alleged to have stolen weapons and undocumented drugs in his car. A former Dothan police officer familiar with the case told us that "Under no circumstances was this legal, he (Magrino) should have been immediately taken into custody prosecuted but he was not because Lt. Parrish defended him and blocked it." "They covered the chiefs conference table, it was unbelievable what he had, all untagged or documented."

Former Dothan police officer Michael Magrino
Magrino subsequently was administered a polygraph test in which he failed miserably, which is illustrated below.

The documents leaked to us appear to reveal that Magrino contacted District Attorney Doug Valeska and Andy Hughes to intervene into the Internal Affairs investigation. The internal affairs investigatorKeith Gray as well spoke with the district attorney. There is no possibility that the district attorney can deny he did not have knowledge of this incident nor the investigation.



**Former officer Michael Magrino**

The head of the Internal Affairs investigation, Sgt. Keith Gray, reportedly warned Magrino this was a violation of the departmental procedures. Magrino then reportedly threatened to go to the press if he was fired, according to the investigator and a taped interview with Andy Hughes.

"He basically would have done anything to save his skin," one of the officers told us.

In the internal affairs documents, three names worth noting appear repeatedly.

Capt. Carlton "Bubba" Ott, now commander of the department's Criminal Investigation Division, Steve Parrish, current Chief, and Andy Hughes, former Sheriff and current Director of Homeland Security for the state.



**Carleton "Bubba" Ott, Steve Parrish, and Andy Hughes**

All were aware of the investigation and its outcome. All have been
rewarded with careers in law enforcement by those for whom they
covered, while those who spoke out were forced out of the department.
Disturbingly, Ott and Parrish have both attended the FBI academy. Both
were highly recommended by the district attorney and former Police
Chief, John White.

However, not one of these officers, or members of the district attorney's
office, had the moral courage to do the right thing and correct the
wrongful prosecutions against the young men who had drugs and
weapons planted on them. Disturbingly, on his web site, John White
lists that he is a adjunct professor at Troy University's Criminal Justice
Program and advertises asking people to let him protect them in the
courtroom.

All of these men are now in secure positions of leadership in law
enforcement. Many of the men wrongly convicted however are still in
prison and have felonies on their record, their lives destroyed.

The results of a polygraph tests given to officers like Michael Magrino
were conclusive. The result was DECEPTION STRONGLY
INDICATED - probability of deception was greater than 99%.

The result of the internal affairs investigation found that many of the officers should be discharged such as the document below states in Officer Magrino's case.

The scale of the problem facing the city is indicated in Magrino's files where it mentions some 50 cases alone in his arrests that were questionably prosecuted. This number does not take into account the previous cases where he was the arresting officer, or the nearly dozen other officers in the squad with allegations against them by fellow officers. On Magrino's web site he lists the following experience.

**Narcotics Investigator**
Dothan Police Dept
September 1992 – October 1999 (7 years 2 months)

I made hundreds of drug related arrests as well as set up undercover stings. I also placed cameras in undercover cars and had agents make purchases of street level drugs throughout Alabama.

Internal Affairs Sergeant, Keith Gray, recommended that Magrino be immediately discharged, and his previous cases reopened for investigation, and the judges and attorneys of those convicted be immediately notified. Gray as, other officers, believed there were possibly hundreds of false arrests in the system by the group of officers, historically perhaps over a thousand if one considers the officers who had complaints against them on the team and their records of drug arrests for the previous years.

However, at this point, our sources and the documents confirm the investigation was shut down, and the files ordered "buried" by Police Chief, John White, and District Attorney, Doug Valeska. The lead investigator, Sgt Keith Gray was not allowed by his superior Chief John White to continue the investigation into the other officers named. This becomes evidenced by a "concerned group Dothan police officers" who

subsequently try to get the US Attorney involved but fail. White then launched an investigation to determine which officers were writing the letters and silent them.

The original group of officers were dismayed that the investigation was covered up. Even more disturbing, the officers responsible were then promoted in the department. They allege the practice of planting drugs continued for years on black men by those who were part of the group. On November 9th an unsigned letter by the officers was put on Dothan City Commissioner Don Clement's desk. In the letter, officers detail how the investigation was covered up and they used officer Magrino as an example, referencing stolen guns and drugs in his patrol car.

They refer to the issue that Magrino, like the other dozen officers had, executed hundreds of arrests that should be questioned in light of the results of the internal affairs investigation.

The letter indicates that federal law enforcement authorities were not notified as required by the department's and state's policies.

The letter directly implicates the top management of the Dothan Police Department as being complicit in a cover up of hundreds of felonies.

Chief John White responded two weeks later in a letter to Dothan City Manager Jerry Gwaltney copied below.

Note carefully that White stated in writing:

"AT NO TIME PREVIOUS, DURING OR SINCE, HAS ANY INDIVIDUAL MADE AN ALLEGATION THAT THIS OFFICER PLANTED OR MANUFACTURED EVIDENCE OR TESTIMONY IN ANY CASE."

This is at direct odds with the assertions of fellow officers and the lead investigator who handled the case for the internal affairs department. White appears to have completely misrepresented the ongoing internal affairs investigation, that is evidenced in a letter to him by Sgt Keith

Gray where he found that one of the officers in question, Michael Magrino, should be discharged.

Further, White seems to have forgotten the previous multiple written complaints by fellow officers implicating a dozen officers who were witnessed planting drugs and guns on black men dating back to 1998, or the fact that he ordered the cases turned over to internal affairs in the first place.

White's own words, as early as Nov 1999, are clear evidence of a cover up.

Police Chief John White was then deposed in an unrelated lawsuit where in June of 2001 he gave the following sworn deposition. Again, note that White appears to mislead and give multiple false statements under oath. At this point, he should have had his APOST certification stripped and been prosecuted.

In the deposition, it appears that Police Chief, John White, now a lawyer and Troy University criminal justice professor, is being misleading. With the leaked internal affairs investigation now made public, it's obvious his sworn testimony is at odds with his written words to city officials, and it appears he lied under oath.

The larger issue could be no less than hundreds of wrongly convicted black men and tens of millions of dollars in potential damages, as well as potential prison terms for himself and the district attorney and those who assisted them.

The original group of police officers responsible for the written complaints were in disbelief and for years afterward attempted to get federal assistance to help those wrongly convicted and continued to warn of the practice of the narcotics team of planting drugs on young black men. The officers who were responsible for the narcotics team,

Steve Parrish and Andy Hughes, continued to be advanced in rank and were richly rewarded for their complicity in hiding the truth.

For two decades District Attorney, Doug Valeska, having full knowledge of the situation, proceeded to earn a reputation across the Wiregrass as a tough prosecutor while knowingly prosecuting black men whom he knew the evidence was planted on them in their cases. The district attorney's office took in millions of dollars in court fees and their pre-trial diversion program.

The group of police officers who chose to notify federal authorities and the US Attorney in a series of constructed letters to protect their own safety documented is below as many had their lives threatened by fellow officers.

By coming forward almost a decade later after these letters, this group of officers who witnessed drugs and weapons being planted and had the moral courage to bravely do the right thing are hoping the United States Department of Justice will intervene. The want a specially appointed federal prosecutor, from outside the state of Alabama to hold District Attorney, Doug Valeska, former Chief, John White, current Chief, Steve Parrish, Homeland Security Director, Andy Hughes, and Capt Carleton Ott responsible. But most importantly, attempt to make those hundreds of young black men's lives whole again who have been victims of the Dothan Police Department.

They believe the time for justice has come.

Editors note: We contacted Dothan Police Chief Steve Parrish regarding this article and he declined comment, however we agreed to cooperate with him to redact any personal information from the documents that we share with the public that would compromise an ongoing investigation or put an individual at risk.